ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona
BRANDON M. BROWN
Assistant U.S. Attorney
Arizona State Bar No. 028892
JONATHAN R. HORNOK
Assistant U.S. Attorney
Utah State Bar No. 15166
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Brandon.Brown3@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-16-0984-PHX-NVW |
| Plaintiff, | |
| vs. | **RESPONSE TO DEFENDANT'S OBJECTION TO THE PSR AND SUPPLEMENTAL SENTENCING MEMORANDUM** |
| Jared Mark Caros, | |
| Defendant. | |

Now comes the United States of America, by and through its undersigned attorneys, respectfully requesting that this Court overrule Defendant's objection to the pre-sentence report, and sentence Defendant to a low-end guideline sentence of 10-months imprisonment followed by three years of supervised release.

**FACTS**

Defendant put the Government through the burden of a trial where his strategy was attacking the victim's character and shifting blame to the victim. Defendant did this by admitting records from a completely unrelated case where the victim is currently completing a deferred prosecution, and asking the jury to surmise that the victim could not be trusted, and was somehow involved in the theft of his own identity. This was an

unnecessary, embarrassing, and difficult experience for a victim that already had his identity stolen by this Defendant.

Prior to this case going to trial, Defendant was offered a probation eligible plea capped at the low-end of the guideline range, and rejected that plea agreement. Defendant was also twice offered the opportunity to participate in a free talk to discuss what he did and why he did it with the possibility of a deferred sentencing agreement, but rejected those offers as well. It appears that either Defendant, his counsel, or both expected that even if they took this case to trial and lost, the Court would still only sentence Defendant to probation. That train of thought is consistent with Defendant's decision to take this case to trial, and the events of the prior sentencing hearing when it became apparent Defendant was going to be sentenced to prison.

After Defendant was found guilty at trial, and the parties prepared for sentencing, Defendant did not meet with probation to discuss the facts of his case, and did not accept responsibility in any way, shape, or form, prior to sentencing. At sentencing, after an hour of allocution where Defendant and his attorney addressed the Court, Defendant still did not accept responsibility for his actions. After allocution when the Court made clear it was going to sentence Defendant to a period of imprisonment, and was seconds away from imposing sentence, Defendant requested time to consult with counsel. Only then did Defendant come forward and offer an explanation of what he did. This explanation was offered not in an effort to save time, resources, or avoid unwarranted embarrassment of the victim, but rather in a last ditch effort to avoid going to prison.

During his explanation Defendant made clear that the victim had absolutely nothing to do with the commission of this crime. Defendant then proceeded to tell an extraordinary story involving the kidnapping of a family member, abuse, and alleged that fear was the reason he committed this crime. In terms of corroboration of this story, Defendant said that he compiled a "40-page report with 10 pages of book quotations and photos and everything else that is available if anyone wants it." RT 9/12/2017, 52. This story contained facts that the Government found difficult to believe, including the fact that

1  Defendant's father is a former high-ranking police officer in Payson, yet Defendant claims
2  he could not get help from law enforcement. Also, despite his training and experience with
3  self-defense and firearms as a paratrooper in the Israeli Military, Defendant claims he was
4  afraid of "Dawn" and in a "moment of panic and stupidity" decided to commit this crime,
5  yet this was a crime that took months to commit.  RT 9/12/2017, 64.

6  Naturally, the Government wanted the opportunity to look into this claim to see
7  whether there was anything corroborating his story.  That same evening, the Government
8  requested the 40 pages of documentation Defendant stated in open court was "available if
9  anyone wants it," but did not receive a response from the defense.  The Government
10 requested that documentation again on October 10, 2017, and was informed by the defense
11 that they would not be forwarding any materials.  That being the case, there has been no
12 corroboration of Defendant's story.

13 Now, after putting the Government through the burden of trial, shifting blame to a
14 victim that Defendant knew had absolutely nothing to do with the commission of this
15 crime, and refusing to provide the documentation he claims corroborates his story, objects
16 to the presentence report and asks the Court to award him acceptance of responsibility.  For
17 the following reasons, Defendant's objection should be overruled, and he should be
18 sentenced to no less than a guideline sentence followed by three years of supervised release.

### I. DEFENDANT SHOULD NOT RECEIVE A REDUCTION FOR ACCEPTEANCE OF RESPONSIBUILITY

Defendant should not receive a reduction for acceptance of responsibility because he did not accept responsibility until after his allocution at sentencing, and only attempted to do so once the Court made clear Defendant was going to be sentenced to prison.

A defendant is entitled to acceptance of responsibility if he "clearly demonstrates acceptance of responsibility" for the offense. U.S.S.G. § 3E1.1. "This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by

denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. § 3E1.1, comment (n.2).

In this case, Defendant denied the charges against him, attempted to shift blame to the victim at trial, did not meet with pre-trial to discuss the facts of the case, and did not admit guilt or express remorse during his original allocution. Additionally, the fraudulent passport remains at large and Defendant has not disclosed where the passport is. Here, Defendant took this case to trial believing that even if he was convicted, the Court would sentence him to probation. Defendant held onto that belief up until the Court was seconds away from imposing sentence and informed Defendant he was going to serve a period of imprisonment.

Defendant's acceptance of responsibility at that point shows that this was not sincere remorse deserving of an acceptance of responsibility reduction, but rather a last-minute effort to avoid a prison sentence. Given that application note two of the acceptance of responsibility guideline expressly states that acceptance of responsibility should not apply in this situation, the Court should overrule Defendant's objection.

## II. REPONSE TO SUPPLEMENTAL SENTENCING MEMORANDUM

In Defendant's supplemental sentencing memorandum, he argues that violations of 18 U.S.C. § 1542 are not inherently dangerous. While that may be true, that argument misses the point that in this case when the Department of State discovered Defendant was a member of a foreign military that had fraudulently obtained a U.S. passport, it created legitimate security concerns, which triggered a costly and time-consuming investigation.

This was a case where Department of State agents had to reasonably assess why a member of a foreign military who already had a U.S. passport would fraudulently obtain another passport with somebody else's identity. Since Defendant was already of drinking age, and could freely enter and leave the United States, the agents had to address the possibility that the passport was being used to travel for covert military purposes. The

agents had to acknowledge the possible danger when assessing the resources necessary to appropriately investigate this case. They also had to consider the ramifications of this fraudulent passport showing up a crime scene or terrorist attack, and having it come to light that they knew Defendant fraudulently obtained a U.S. passport, but did not allocate adequate resources to apprehending Defendant. Given what they knew, the Department of State agents had a duty to actively track and apprehend Defendant, which led to agents to search for Defendant in Philadelphia, and upon discovering Defendant was in Israel, making efforts to ensure he was apprehended upon returning to the United States.

While not every false statements in the acquisition of a passport cases gives the Department of State concerns about convert military actions or international relations ramifications, this case reasonably and rightfully did. Knowing that a paratrooper who was a member of a foreign military had fraudulently obtained a U.S. passport, the Department of State took reasonable and necessary steps to address the potential security concerns created by this particular defendant in this particular case.

### III. THE GOVERNMENT'S POSITION ON SENTENCING

The Government's position on sentencing has not changed. This is a Defendant that could have been eligible for probation had he timely accepted responsibility, but chose not to thinking that he could still get probation after trial. This trial caused an undue burden on the victim, who Defendant knew had nothing to do with the commission of this crime. This trial took place one week prior to the victim's wedding, and instead of spending that time with his fiancé, spent that time traveling back and forth from Payson to Phoenix testifying and facing character attacks from the defense. Given Defendant's lack of acceptance of responsibility as defined by United States Sentencing Guideline 3E1.1, Defendant should receive a guideline sentence of no less than 10-months imprisonment followed by three years of supervised release. If the Court wishes to give Defendant credit for his admission of guilt seconds before imposition of sentence at the last hearing, the

1 | Court can split the sentence, sentencing Defendant to five months incarceration, and five
2 | month of home detention, followed by supervised release.

3 | Respectfully submitted this 24th day of October, 2017.

ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona

 *s/Brandon M. Brown*
BRANDON M. BROWN
JONATHAN R. HORNOK
Assistant U.S. Attorneys

# CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of October, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrant:

Benjamin Good
Milagros Cisneros

*s/Brandon M. Brown*
U.S. Attorney's Office